1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    EASTERN DISTRICT OF CALIFORNIA

10   JOSEPH CAMPOS,                          )   1:08-cv-00001  GSA
                                            )
11              Plaintiff,                  )   **ORDER REGARDING CITY OF MERCED**
                                            )   **AND MERCED POLICE OFFICER**
12       v.                                 )   **JEFFREY HORN'S MOTION FOR**
                                            )   **SUMMARY JUDGMENT**
13   CITY OF MERCED, et al.,                )
                                            )   (Document 40)
14              Defendants.                 )
     _____ )

15

16

17                              **I.**
            **DEFENDANTS CITY OF MERCED AND MERCED POLICE OFFICER**
18             **JEFFREY HORN'S MOTION FOR SUMMARY JUDGMENT**

19       **A.      Relevant Procedural Background**

20            On April 6, 2007, Plaintiff Joseph Campos filed a Complaint in the Merced County

21   Superior Court, alleging the following causes of action: (1) a violation of Title 42 of the United

22   States Code section 1983; (2) false arrest and imprisonment; (3) interference with California civil

23   rights; (4) intentional infliction of emotional distress; (5) negligence per se; (6) negligent

24   infliction of emotional distress; (7) assault and battery; and (8) negligence.  (*See* Doc. 1, Ex. A,

25   Parts I & II.)

26            On December 27, 2007, Defendant City of Merced filed an Answer to the complaint.

27   (*See* Doc. 1, Ex. C, Part I at 5-12.)  Shortly thereafter, Defendant Merced Police Officer Jeffrey

28   Horn filed an Answer to the Complaint.  (*See* Doc. 1, Ex. C, Part II.)

                                              1

On or about December 28, 2007, Defendants City of Merced and Officer Horn filed a Notice of Removal pursuant to Title 28 of the United States Code section 1441(b).  (*See* Docs. 1-2.)

Following consent to magistrate jurisdiction by all parties, this matter was referred to the Honorable Gary S. Austin, Magistrate Judge, on April 14, 2008, for all further proceedings. (Doc. 14.)

Defendants filed the instant motion for summary judgment on January 29, 2010.  (Docs. 40-43.)  Plaintiff filed his opposition on February 12, 2010.  (Docs. 45-48.)  On February 19, 2010, Defendants filed a reply to Plaintiff's opposition.  (Doc. 49.)

On February 22, 2010, this Court took the February 26, 2010, hearing off calendar and took the matter under submission pursuant to Local Rule 230(g).  (Doc. 50.)[1]

**B.     Summary of Undisputed Facts**

In moving for summary judgment, Defendants set forth the following facts as undisputed. Plaintiff accepts these facts except where noted and discussed.

1.      On the evening of July 16 through July 17, 2005, Merced Police Officer Horn was on duty assigned to bar patrol with Officer Frank Bazzar in downtown Merced.

2.      The officers had been assigned bar patrol as the result of a large number of fights that had been occurring at downtown bars, including Maloney's.

3.      Plaintiff and his wife Diane Maravilla Campos arrived at Maloney's at about 12:30 a.m.

4.      About a half hour later, Plaintiff was approached on the dance floor by his sister-in-law Linda Prieto.[2]

---

[1]The Court carefully reviewed and considered all relevant pleadings, points and authorities, declarations, and exhibits.  Any omission of a reference to a pleading is not to be construed that this Court did not consider the argument or pleading.

[2]Plaintiff initially disputed this fact with regard to the time frame asserted because Defendants originally stated one hour had passed.  However, following Plaintiff's objection, Defendants acknowledged in their reply that the proper time frame was one hour.

5.      Ms. Prieto advised Plaintiff that his stepdaughter Sharee Sok was outside crying.

6.      Plaintiff has raised Ms. Sok from the age of five.  She was married to Gary Sok.

7.      Plaintiff and his wife exited Maloney's in order to check on Ms. Sok.

8.      Plaintiff found Ms. Sok outside.  She had a bump on her head.

9.      After checking on Ms. Sok, Plaintiff began to follow his wife up the street.

10.     Officers Horn and Bazzar were approaching Maloney's.  They observed a woman lying on the ground and Mr. Sok, who was yelling and throwing his arms in the air, walking northbound towards 18th Street.

11.     Mr. Sok had removed his "top" shirt as he walked, leaving on a "muscle" shirt; his tattoos were visible.

12.     Both officers sought to contact Mr. Sok, assuming he had been involved in a fight.

13.     Officer Bazzar caught up to Mr. Sok, and Officer Horn turned back to check on Plaintiff's stepdaughter, Ms. Sok, to find out what had occurred.

14.     As Officer Horn was returning to the area of Maloney's, he encountered Plaintiff walking in his direction.

15.     At the time of the incident, Plaintiff was five feet, ten inches tall and weighed approximately 220 pounds.  Officer Horn is five feet, six inches tall and weighed approximately 185 pounds.

16.     When Plaintiff was about twenty feet from his wife, Officer Horn placed his hand on Plaintiff's chest.

17.     Officer Horn asked Plaintiff was he was doing; Plaintiff responded that his daughter had fallen down or had been assaulted.

18.     Plaintiff told Officer Horn that his wife had caught up with Mr. Sok at the corner.

19.     Officer Horn was not disrespectful to Plaintiff and did not use profanity.

20.     Plaintiff turned and began walking toward his wife, Mr. Sok and Officer Bazzar.

21.     *See* footnote 6, *infra*.

22.     According to Plaintiff, Officer Horn did not say anything to him after he began walking away.

23.     There was a crowd of at least seven people on the sidewalk behind Plaintiff at the time of the incident.

24.     After Plaintiff took five to ten steps toward his wife, Mr. Sok and Officer Bazzar, Officer Horn tased Plaintiff from behind.

25.     After Officer Horn deployed his taser against Plaintiff, the officer retreated to the street and radioed for back-up units.[3]

26.     Officer Horn did not use any racial slurs or otherwise indicate that Plaintiff's race played a role in the incident.

27.     Plaintiff was charged with resisting arrest and assault on a police officer,[4] and voluntarily pleaded no contest to disturbing the peace arising out of the incident.[5]

28.     *See* footnote 7, *infra*.

---

[3]Plaintiff attempts to dispute this fact wherein he proffers a declaration that he does not recall the officer immediately retreating to the street.  However, an inability to recall events is not a "'specific fact[] showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, the Court finds the fact to be undisputed.

[4]California Penal Code section 243(b) provides, in pertinent part: "When a battery is committed against the person of a peace officer . . . engaged in the performance of his or her duties . . . and the person committing the offense knows or reasonably should know that the victim is a peace officer . . . the battery is punishable . . . ."

[5]Plaintiff disputes this fact and refers the Court to his own declaration and that of Plaintiff's counsel.  (*See* Doc. 46 at 4.)  However, documents appended as exhibits to Mr. Escamilla's declaration clearly establish that Plaintiff was indeed charged with a violation of California Penal Code section 243(b) - assault on a peace officer. (Doc. 45, Ex. 3 [citation dates July 17, 2005] & Ex. 8 [amended complaint alleging violation of same in count 2].) Plaintiff's references to the fact that Officer Horn was not identified as the victim of the offense is irrelevant; Defendants did not state Officer Horn was or was not a victim.  Rather the undisputed fact is simply whether or not Plaintiff was charged with a violation of that crime.

Plaintiff disputed two of Defendants' statement of undisputed facts that the Court has determined to be disputed and material.  More particularly, this Court finds that, as originally numbered, fact numbers 21[6] and 28[7] are disputed.

## II.

## LEGAL STANDARDS

Rule 56(b) of the Federal Rules of Civil Procedure permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim."  Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

The moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

[6]21.     Plaintiff appeared anxious as he approached his wife, Mr. Sok and Officer Bazzar. Defendants support this fact with reference to Plaintiff's wife's deposition.
Plaintiff disputed this fact and in support thereof refers to his Declaration at paragraph 13: "On the evening of July 17, 2005, as I approached my wife, Mr. Sok and Officer Bazzar, I do not recall being anxious for any reason."  (Doc. 47 at 2.)  This fact is in dispute.

[7]28.     Plaintiff has not sought to appeal, overturn or otherwise set aside his conviction for disturbing the peace.  Defendants support this fact with Plaintiff's deposition testimony at page 61, line 25 through page 62, line 2.
Plaintiff disputes this fact.  He offers his declaration at paragraph 21 and counsel's declaration at paragraphs 17 through 19.  (Doc. 46 at 4.)  Plaintiff declares that on February 11, 2010, his attorney filed a "Petition for Dismissal" and the petition was to be heard March 7, 2010 which would result in expungement.  (Doc. 47, ¶ 21; *see also* Doc. 45, ¶ 19 & Ex. 9.)  This fact is in dispute.

1  *Celotex Corp., v. Catrett*, 477 U.S. 317, 323 (1986).

2      To carry its burden of production on summary judgment, a moving party "must either

3  produce evidence negating an essential element of the nonmoving party's claim or defense or

4  show that the nonmoving party does not have enough evidence of an essential element to carry its

5  ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,

6  210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance*

7  *Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the

8  motion, the moving party must persuade the court that there is no genuine issue of material fact."

9  *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the

10  substantive law will identify which facts are material.  Only disputes over facts that might affect

11  the outcome of the suit under the governing law will properly preclude the entry of summary

12  judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

13      "If a moving party fails to carry its initial burden of production, the nonmoving party has

14  no obligation to produce anything, even if the nonmoving party would have the ultimate burden

15  of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes v. S.H. Kress & Co.*, 398

16  U.S. 144, 160, 90 S.Ct. 1598 (1970).  "If, however, a moving party carries its burden of

17  production, the nonmoving party must produce evidence to support its claim or defense." *Nissan*

18  *Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574.  "If the nonmoving party fails to

19  produce enough evidence to create a genuine issue of material fact, the moving party wins the

20  motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*,

21  477 at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for

22  discovery and upon motion, against a party who fails to make the showing sufficient to establish

23  the existence of an element essential to that party's case, and on which that party will bear the

24  burden of proof at trial.")

25      "But if the nonmoving party produces enough evidence to create a genuine issue of

26  material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see*

27  *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine

28

issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c); *Covey Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

Under Federal Rules of Civil Procedure, rule 56(d)(1), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. "In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others." *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981); *see also Robi v. Five Platters, Inc.*, 918 F.2d 1439 (9th Cir. 1990); *Cheng v. Commissioner Internal Revenue Service*, 878 F.2d 306, 309 (9th Cir. 1989). A court "may grant summary adjudication as to specific issues if it will narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal. 1977).

1

**III.**

2

**DISCUSSION**

3

**A.**    ***Plaintiff's Claim Pursuant to Title 42 of the United States Code section 1983***

4      Defendants argue that Officer Horn's conduct did not result in a deprivation of Plaintiff's

5 constitutional rights, thus, Horn is entitled to judgment as a matter of law.  Defendants rely upon

6 recent Ninth Circuit authority regarding the use of tasers.  (Doc. 41 at 5-10.)  Plaintiff argues

7 generally that the declaration and deposition testimony he has submitted "are sufficient in and of

8 themselves to defeat the motion" on the issues of excessive force and probable cause to arrest

9 because triable issues of material fact exist.  (Doc. 48 at 7-13.)

10      **1.    Probable Cause**

11      Plaintiff argues that Officer Horn did not have probable cause to arrest him for violations

12 of California Penal Code sections 148(a)[8] and 243(b).  More particularly, Plaintiff contends a

13 triable issue of material fact exists as to whether he "was obstructing a police officer in the

14 performance of his duties and whether battery was committed upon Officer Horn . . . ."  (Doc. 48

15 at 6-7.)  Defendants reply that even assuming Plaintiff's version of events, Officer Horn had

16 probable cause to arrest Plaintiff.  (Doc. 49 at 6.)

17      Initially, it is noted that "establishing a lack of probable cause . . . does not establish an

18 excessive force claim."  *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004).  An

19 arrestee's resistance may support the use of force regardless of whether probable cause existed.

20 *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *see also*

21 *Blanford v. Sacramento County*, 406 F.3d 1110, 1115-1118 (9th Cir. 2005).  "Probable cause

22 exists when the facts and circumstances within the officer's knowledge are sufficient to cause a

23 reasonably prudent person to believe that a crime has been committed."  *Lassiter v. City of*

24 *Bremerton*, 556 F.3d 1049, 1053 (9th Cir. 2009).   The existence of probable cause may be

25

26      [8]The section provides, in pertinent part: "Every person who willfully resists, delays, or obstructs any . . .
27 peace officer . . . in the discharge or attempt to discharge any duty of his or her office . . . shall be punished by a fine
not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both
28 that fine and imprisonment."

considered as a part of the totality of circumstances affecting the excessive force analysis.  *See*

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005).

Here, it is undisputed that Officers Horn and Bazzar were approaching Maloney's when they observed a woman lying on the ground.  Mr. Sok was nearby, yelling and throwing his arms in the air.  Mr. Sok was walking northbound towards 18th Street and had removed his shirt.  The officers assumed he had been in a fight.  Officer Bazzar sought to catch up to Mr. Sok, and Officer Horn turned back to check on the woman.  (Doc. 43, ¶¶ 10-13.)  Officer Horn was returning to the area of Maloney's when he encountered Plaintiff walking in his direction, toward Officer Bazzar and Mr. Sok.  Officer Horn placed his hand on Plaintiff's chest and asked Plaintiff was he was doing.  Plaintiff told the officer that his daughter had fallen down or had been assaulted, and that his wife had caught up with Mr. Sok.  Plaintiff then turned and began walking toward his wife, Mr. Sok and Officer Bazzar.  (Doc. 43, ¶¶ 14-20.)  Officer Horn did not say anything to Plaintiff after he began walking away.  A crowd of at least seven people was on the sidewalk behind Plaintiff at about this time.  After Plaintiff took five to ten steps away in the direction of his wife, Mr. Sok and Officer Bazzar, Officer Horn deployed his taser. (Doc. 43, ¶¶ 22-24.)

Given the facts and circumstances available to Officer Horn, it was reasonable for the officer to believe Plaintiff was resisting, delaying or obstructing his efforts where Plaintiff walked away from Officer Horn and toward Officer Bazzar, his wife and Mr. Sok.  Additionally, the Court notes there is little, if any, information regarding the alleged violation of California Penal Code section 243(b).  Neither party has provided the Court with facts pertaining to such a violation, whether it involved Officer Horn or Officer Bazzar, or any other individual.  "As long as the officers had some reasonable basis to believe [Plaintiff] had committed a crime, the arrest is justified as being [] based on probable cause.  Probable cause need only exist as to any offense that could be charged under the circumstances."  *Bingham v. City of Manhattan Beach*, 485 F.3d 939, 952 (9th Cir. 2003).

1      In sum, probable cause to arrest Plaintiff for a violation of California Penal Code section

2 148(a) existed because the facts and circumstances known to Officer Horn were sufficient to

3 cause a reasonably prudent person to believe that a crime had been committed. *Lassiter v. City of*

4 *Bremerton*, 556 F.3d at 1053. Defendants' motion for summary judgment is GRANTED with

5 regard to this claim.

6              **2.**        **Excessive Force/Use of Taser**

7      Defendants assert that Officer Horn did not violate Plaintiff's Fourth Amendment right to

8 be free from excessive force because Officer Horn's use of the taser was reasonable in light of

9 the reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386 (1989) and recent

10 Ninth Circuit decisions in *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010) and *Bryan v.*

11 *McPherson*, 590 F.3d 1082 (9th Cir. 2009). (Doc. 41 at 5-12.)

12      Plaintiff responds that a triable issue of material fact exists with regard to the question of

13 excessive force. He argues "that any claims of resisting arrest obstructing an officer are made

14 moot by the excessive force used to effectuate Plaintiff's arrest." Plaintiff asserts the improper

15 use of a taser can constitute excessive force and that in this case "there was no justification for

16 use of the taser." Because Plaintiff was facing only misdemeanor charges and because "he posed

17 no threat to any person or police officer on July 17, 2005," the force employed was excessive.

18 (*See* Doc. 48 at 11-13.)

19      An excessive force claim is analyzed under the Fourth Amendment's "objective

20 reasonableness" standard. *Graham v. Connor*, 490 U.S. at 388. The inquiry "requires a careful

21 balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

22 interests against the countervailing government interests at stake." *Id.*, at 396, internal quotation

23 marks omitted. Because reasonableness "is not capable of precise definition or mechanical

24 application," the inquiry requires "attention to the facts and circumstances of each particular

25 case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate

26 threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or

27 attempting to evade arrest by flight." *Id.* These factors should be considered in relation to the

28

amount of force used.  *Smith v. City of Hemet*, 394 F.3d at 701.  Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation."  *Id.*, at 396-97.  "Force is excessive when it is greater than reasonable under the circumstances."  *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002).

"Determination of a reasonableness range requires consideration of the totality of the circumstances, including whether a warning was given, and the availability of alternative methods of capturing and subduing a suspect.  The fact that a suspect does not threaten the officer does not shield him from the use of force."  *Brooks v. City of Seattle*, ___ F.3d ___, 2010 WL 1135776 (9th Cir. (Wash.)), internal citations omitted.

### a.      Quantum of Force

The gravity of the particular intrusion on Fourth Amendment interests is evaluated by analyzing the type and amount of force inflicted.  *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003), quoting *Graham v. Connor*, 490 U.S. at 396.

Here, Defendants acknowledge that use of a taser stun represents a serious intrusion of Plaintiff's Fourth Amendment interests.  (Doc. 41 at 10.)  However, they contend Officer Horn's use of the taser in this circumstance was reasonable.

### b.      The *Graham* Factors

### i.      *Severity of the Crime*

Plaintiff was arrested because he walked away from Officer Horn, after advising Officer Horn that his daughter had fallen down or had been assaulted.  A crowd of at least seven others was on the sidewalk behind Plaintiff.  After Plaintiff took five to ten steps in the direction of his wife, son-in-law and Officer Bazzar, Officer Horn deployed his taser.  Plaintiff was ultimately

1  cited for a violation of California Penal Code sections 148 (obstruction of justice) and 243(b)

2  (battery on a peace officer).[9]

3        Obstructing an officer is not a serious crime. *Mattos v. Agarano*, 590 F.3d at 1087-88;

4  *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007).   Nevertheless, the Ninth Circuit

5  held that in certain circumstances, obstruction of a police officer can justify the use of a Taser.

6  *Mattos*, 590 F.3d at 1087-88.  *Mattos* involved law enforcement response to a 911 call

7  concerning an altercation between Jayzel and Troy Mattos.   Several Maui police officers

8  responded to the call and found Troy sitting at the top of the stairs just outside the front door of

9  the residence.   It appeared he had been drinking and was intoxicated.   One of the officers asked

10  Troy what had happened.   Troy said he and his wife had a verbal altercation and denied any

11  physical contact occurred.   Troy was asked to have Jayzel come out and speak to the officers so

12  they could confirm she was safe.  *Id.*, at 1084.   Troy claimed one of the officers followed him

13  inside.   He became upset, began yelling and insisted the officer leave the house.   Jayzel agreed to

14  talk to the officers outside and asked Troy to calm down so that the children would not wake up.

15  As an officer entered the hallway to arrest Troy, Jayzel asked why Troy was being arrested.   She

16  again asked officers why Troy was being arrested and also asked Troy to calm down and leave

17  the house.  *Id.*, at 1084-85.   At this point, Jayzel was cornered between Officer Agarano and

18  Troy, with Officer Aikala beside her.   When Aikala moved to arrest Troy, he bumped against

19  Jayzel.   Aikala asked Jayzel if she was touching an officer.   Jayzel was scared and again implored

20  everyone to calm down.   She then raised her hands at chest level, palms out, to keep the officer at

21  arm's length.   Aikala then tased Jayzel.   Troy and Jayzel were arrested and charged.   Eventually,

22  all charges were dropped against the Mattoses. *Id.*, at 1085.

23        The district court granted summary judgment in favor of defendants as to all claims save

24  for a claim of excessive force under the Fourth Amendment based on the officer's use of a taser

25  on Jayzel.   The district court found that there were questions of material fact regarding whether

26  the use of the Taser was constitutionally reasonable.   Defendants appealed.  *Id.*, at 1085.   Calling

27

28        [9]As previously noted, information concerning any battery upon a peace officer is less than sparse.

1    the question "a close one," the Ninth Circuit concluded the officers did not use excessive force in

2    violation of the Fourth Amendment. *Id.*, at 1086. The appellate court held that Jayzel's

3            contact with Aikala appears to have been incidental and due mainly to the
             cramped quarters in which the Mattoses and the officers found themselves rather
4            than to any intention on Jayzel's part to interfere with the officers. Additionally,
             however, we must take into account Troy's actions. He was belligerent and
5            appeared to be intoxicated. As explained by the 911 call, Troy's conduct that
             evening was a threat to Jayzel, and in his intoxicated condition, Troy posed a
6            threat to the officers as well. Thus, Jayzel herself may have posed little threat, but
             any interference she caused only heightened the danger Troy represented. As the
7            district court found, Jayzel's actions 'exacerbated an already tense, and rapidly
             escalating situation.' On balance then, Jayzel's actions were not a serious crime
8            . . . but carried the potential for a far more serious crime-assault on an officer.

9    *Id.*, at 1087-88.

10          In *Bryan v. McPherson*, 590 F.3d 767 (9th Cir. 2009), the Court was presented with a

11   somewhat different set of facts that involved the use of a taser. Plaintiff Carl Bryan had already

12   experienced a very trying situation involving a set of keys that went missing in Ventura County

13   that required he travel to Los Angeles to retrieve them. While in Los Angeles, Bryan was pulled

14   over by a California Highway Patrol ("CHP") officer for speeding. He became very upset at this

15   turn of events, and was crying and moping. Eventually nearing their final destination, Bryan and

16   his younger brother crossed the Coronado Bridge toward their parents' home in Coronado.

17   However, Bryan was stopped at an intersection because he was not wearing his seatbelt. He

18   realized immediately that he had forgotten to refasten his seat belt following his earlier encounter

19   with the CHP officer. Bryan complied with Officer McPherson's requests that he turn down his

20   radio and pull over to the curb, but he did not respond to the officer's inquiry about whether he

21   knew why he had been stopped. Bryan was becoming increasingly angry with himself over the

22   possibility of a second ticket, and once he pulled his car to the curb as directed, "he hit his

23   steering wheel and yelled expletives to himself." *Id.*, at 770-71. Bryan exited the car in an

24   agitated state, "yelling gibberish and hitting his thighs, clad only in his boxer shorts and tennis

25   shoes." *Id.*, at 771. He was standing twenty to twenty-five feet from Officer McPherson. The

26   officer testified that he instructed the Bryan to stay in the car, but Bryan did not hear such an

27   instruction. Officer McPherson said Bryan "took 'one step' toward him," but Bryan denied

28

taking any step.  Without giving a warning, Officer McPherson deployed his taser.  Bryan fell to the ground, suffering facial contusions and fracturing four teeth.  *Id.*, at 771.

On summary judgment, the district court determined that Officer McPherson was not entitled to qualified immunity, after having granted relief to the City of Coronado and the Coronado Police Department.  That court found that a reasonable jury could find that Bryan was not an immediate threat, and thus the officer's use of force was unnecessary.  *Id.*, at 771-72.  The Ninth Circuit, in assessing the severity of Bryan's crime, held as follows:

> The severity of Bryan's purported offenses provide little, if any, basis for Officer McPherson's use of physical force.  It is undisputed that Bryan's initial crime was a mere traffic infraction - failing to wear a seat belt - punishable by a fine. . . .  Officer McPherson also claims that he reasonably believed Bryan had committed three misdemeanors - resisting a police officer, failure to comply with a lawful order, and using or being under the influence of any controlled substance - and that these constitute serious and dangerous criminal activity.  We disagree with Officer McPherson's assessment.  While the commission of a misdemeanor is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and posed no threat to the safety of the officers or others.  None of the offenses for which Bryan was cited in inherently dangerous or violent, and as already discussed, Bryan posed little to no safety threat.  Therefore, there was no substantial government interest in using significant force to effect Bryan's arrest for these misdemeanor violations that even the State of California has determined are minor.

*Bryan v. McPherson*, 590 F.3d at 777, internal citations and quotation marks omitted.

There are significant differences between the facts of this case and those at work in both *Mattos* and *Bryan*.  While it is much plainer in *Bryan* that the officer's use of the taser was unreasonable, here the undisputed facts differ enough (as discussed more fully *infra*) from the circumstances present in *Mattos* that resulted in a finding that the officer's use of force was reasonable.  For example, *Mattos* involved a 911 call that identified the parties involved in a domestic violence matter, Troy's intoxication was clear and the situation was potentially volatile.  Notably too, like *Bryan*, this case involves a lack of warning.

Considering Plaintiff's evidence and all reasonable inferences drawn therefrom, the evidence weighs against the government's interest in the use of force.

ii.    *Threat Posed to Officers or Others*

This is the most significant *Graham* factor. *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v.Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.*

Officer Horn and Officer Bazzar were on foot patrol in downtown Merced when they saw a woman lying on the ground outside Maloney's bar. A man nearby was yelling and throwing his arms in the air, walking northbound towards 18th Street. (Doc. 43, ¶¶ 1 & 10.) Officer Bazzar caught up to the man, later identified as Plaintiff's son-in-law Mr. Sok, and Officer Horn turned to check on the woman. Officer Horn encountered Plaintiff walking toward him. The officer stopped Plaintiff by placing a hand on his chest. The officer asked Plaintiff what he was doing, and Plaintiff responded that his daughter had fallen down or had been assaulted. (Doc. 43, ¶¶ 13-14, 16-17.) After telling Officer Horn that his wife had caught up with Mr. Sok at the corner, Plaintiff began walking in that direction. (Doc. 43, ¶¶ 18 & 20.) A crowd of people was behind Plaintiff on the sidewalk. When Plaintiff had taken five to ten steps in the direction of Officer Bazzar, Mr. Sok and his wife, Officer Horn deployed his Taser at Plaintiff from behind. (Doc. 43, ¶¶ 23-25.)

Plaintiff may have posed a threat to the officers and/or the crowd. This situation is not one involving merely a statement by Officer Horn that he feared for his safety; rather, objective factors justify the officer's concern. *Deorle v.Rutherford*, 272 F.3d at 1281. Officer Horn and Officer Bazzar had come upon an altercation of some kind. The officers saw a woman lying on the ground, and a young man angrily walking away. Officer Horn encountered Plaintiff between Mahoney's - where the woman was seen lying on the ground - and the area where Officer Bazzar encountered Mr. Sok. After stopping for Officer Horn and answering his question, Plaintiff took

1    five to ten steps away from Officer Horn with the intent of reaching the area of his wife, Mr. Sok

2    and Officer Bazzar.  A crowd consisting of about seven members of the public was nearby.

3            Accordingly, these objective factors weigh in favor of the government's interest in the use

4    of force.

5                    iii.    *Resistance to Arrest and Risk of Flight*

6            Here the Court considers whether the "suspect was actively resisting arrest or attempting

7    to evade arrest by flight."  *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003).  In *Bryan v.*

8    *McPherson*, the Ninth Circuit stated that

9            "[r]esistance," however, should not be understood as a binary state, with
         resistance being either completely passive or active.  Rather, it runs the gamut
10        from the purely passive protestor who simply refuses to stand, to the individual
         who is physically assaulting the officer.  We must eschew ultimately unhelpful
11        blanket labels and evaluate the nature of any resistance in light of the actual facts
         of the case.  For example, in *Smith v. City of Hemet*, we confronted an individual
12        who "continually ignored" officer commands to remove his hands from his
         pockets and to not re-enter his home.  In addition, he "physically resisted . . . for
13        only a brief time." [Citation.]  Although Smith was not perfectly passive in the
         encounter, we stated that it did not appear "that Smith's resistance was
14        particularly bellicose" and thus found that this factor provided little support for a
         use of significant force. [Citation.]  Even purely passive resistance can support the
15        use of some force, but the level of force an individual's resistance will support is
         dependent on the factual circumstances underlying that resistance.

16

17   *Bryan v. McPherson,* 590 F.3d at 778-79.

18          On Plaintiff's version of the facts, Plaintiff stopped when Officer Horn placed his hand

19   on his chest, he answered Officer Horn's inquiry, and then he turned to proceed in the direction

20   of his wife.  Officer Horn did not say anything further, Plaintiff took five to ten steps, and then

21   Officer Horn deployed his taser.  These facts do not establish active resistance to arrest and there

22   exists a genuine dispute as to whether or not Plaintiff was attempting to evade or resist arrest by

23   walking away from Officer Horn, particularly where Horn gave no warning prior to deploying the

24   taser.  Thus, this third *Graham* factor tips in favor of Plaintiff.

25                   c.    **Totality of the Circumstances**

26          A consideration of the totality of circumstances may look to factors other than those

27   stated in *Graham v. Connor.  See Forrester*, 25 F.3d at 806 n.2.  According to Plaintiff, Officer

28

1    Horn made no statement whatsoever after Plaintiff began walking away.  (*See* Doc. 43, ¶ 21.)

2    "[P]olice officers normally provide such warnings where feasible, even when the force is less

3    than deadly, and that the failure to give such a warning is a factor to consider."  *Bryan v.*

4    *McPherson*, 590 F.3d at 779.

5        In sum, given the facts viewed in the light most favorable to Plaintiff, there exists a

6    genuine issue as to the reasonableness of Officer Horn's use of the taser.  *Matsushita Elec.*, 475

7    U.S. at 586.  Accordingly, the motion is DENIED as to this cause of action.

8                        **3.    Qualified Immunity**

9        Qualified immunity shields government officials "from liability from civil damages

10   insofar as their conduct does not violate clearly established statutory or constitutional rights of

11   which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102

12   S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The "concern of the immunity inquiry is to acknowledge that

13   reasonable mistakes can be made," and that it is "often difficult for an officer to determine how

14   the relevant legal doctrine will apply to the factual situation that he faces."  *Estate of Ford v.*

15   *Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002).

16       First, a court must determine whether the facts alleged or shown by the plaintiff establish

17   a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272

18   (2001).  If the court determines a constitutional violation did not occur, further analysis is

19   unnecessary and qualified immunity will protect defendant from liability.  *Id.*  If however the

20   question is answered affirmatively, the court asks whether the right at issue was clearly

21   established at the time.  *Id.*  "If the law did not put the [defendant] on notice that [his] conduct

22   would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Id.*,

23   at 202.  The court has discretion to consider either question first.  *Pearson v. Callahan*, ___ U.S.

24   ___, 129 S.Ct. 808, 818-19, 172 L.Ed.2d 565 (2009) (overruling holding in *Saucier* that two-step

25   inquiry must be conducted in that order); *McSherry v. City of Long Beach*, 560 F.3d 1125, 1130

26   (9th Cir. 2009).

27

28

1    Plaintiff has presented evidence that he stopped and responded to Officer Horn's inquiry

2  and that after he turned toward his wife, Mr. Sok and Officer Bazzar, Officer Horn did not say

3  anything further to him before eventually deploying his taser.  Taken in the light most favorable

4  to Plaintiff, these facts are sufficient to show that Officer Horn violated Plaintiff's rights under

5  the Fourth Amendment.

6    Next, this Court considers whether Officer Horn's conduct "violate[d] clearly established

7  statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

8  *Fitzgerald*, 457 U.S. at 818.  Defendants argue that "Officer Horn encountered a potentially

9  explosive situation that, to his knowledge, involved domestic violence" and Horn's reasonable

10  assumption "that Plaintiff had been consuming alcohol."  As a result, Defendants argue, the

11  instant matter is more analogous to the situation in *Mattos* wherein the defendant officers were

12  determined to be entitled to qualified immunity.  (Doc. 41 at 17.)

13    The Court is not persuaded by Defendants' argument on this issue.  In *Mattos v. Agarano*,

14  the Ninth Circuit held that

15    [b]efore August 23, 2006, when the confrontation occurred, neither our circuit nor
     the Supreme Court had decided an excessive force case involving the use of a
16    Taser; in fact, only the Sixth, Tenth, and Eleven Circuits even addressed such
     cases. [Citations.]  In all three cases, the courts held that the use of a Taser was
17    constitutionally permissible.  We note, however, that the Eleventh Circuit has
     recently rejected qualified immunity for officers who used a Taser to shock a man
18    (who appeared mentally unstable) eight to twelve times before making any
     attempt to arrest him. [Citation.] The court found that although the initial use of
19    the Taser may have been justified, the officers' repeated use of the Taser was
     unreasonable and excessive under the Fourth Amendment. [Citation.] More
20    recently, in *Bryan v. McPherson* [], we rejected qualified immunity for an officer
     who used a Taser on a driver during a traffic stop for a seatbelt infraction. . . .  We
21    determined that even though the driver's behavior was bizarre, it posed no threat
     to the officer and did not indicate that the driver was attempting to flee.  We
22    denied the officer qualified immunity, holding that his use of force was excessive
     and unreasonable.
23    . . . this is simply not a case in which the officers' conduct was so
     "patently violative of Jayzel Mattos's constitutional rights "that reasonable
24    officials would know without guidance from the courts that the action was
     unconstitutional." [Citation.]  The officers used the Taser only once in a domestic
25    violence situation that could have quickly become more dangerous to everyone
     involved.  Because claims of excessive force are analyzed under a Fourth
26    Amendment reasonableness standard using the factors delineated by the Supreme
     Court in *Graham v. Connor* [], nothing in our opinion today prevents another
27    panel from deciding, with the benefit of a more complete and more substantial

28

1  evidentiary record than the one we have in this case, that the use of a Taser
2  constituted excessive force.

3  *Mattos v. Agarano*, 590 F.3d at 1089-90.

4      Unlike *Mattos*, where a 911 caller identified Jayzel and Troy Mattos as involved in a
5  domestic disturbance, Officer Horn was initially uncertain of any party's involvement in an
6  altercation that resulted in a woman lying on the ground outside Mahoney's bar.  However, after
7  Officer Horn spoke with Plaintiff, he was aware that either Plaintiff's daughter had fallen down
8  or had been assaulted.  Also, unlike *Mattos*, there are no facts indicating that Officer Horn had
9  attempted to arrest Plaintiff, or any other party, before deploying his Taser.  While this case
10 involves one application of the Taser, the undisputed facts do not speak to any indication of a
11 warning by Officer Horn.

12     Officer Horn is not entitled to summary judgment on the issue of qualified immunity.  A
13 reasonable jury, if it accepts Plaintiff's version of the events, could find that the decision by Horn
14 to use any force to effect the arrest violated the excessive force clause of the Fourth Amendment.
15 Accordingly, the motion is DENIED on this basis.

16          **B.    *Plaintiff's Due Process and Equal Protection Claims***

17     Plaintiff's complaint asserts violations of his Fourteenth Amendment rights "to be free
18 from summary punishment without due process, and to equal protection of the laws."  (Doc. 1,
19 Ex. A, ¶ 24.)  Defendants move for summary judgment on these claims as "Plaintiff was not
20 'punished' at the scene of the incident, but was seized."  (Doc. 41 at 13-14.)  Further, Defendants
21 assert the Complaint fails to "state the basis for" the equal protection violation, and Plaintiff
22 cannot produce evidence of discrimination.  (Doc. 41 at 14.)

23     Plaintiff fails to address Defendants' argument in his opposition.  At no point does
24 Plaintiff reference or discuss any violation relative to due process or equal protection.  (*See* Doc.
25 48.)

26     "To succeed on a § 1983 claim [based on the equal protection clause of the Fourteenth
27 Amendment], the plaintiffs must prove that the defendants acted in a discriminatory manner and

28

1  that the discrimination was intentional." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736,

2  739 (9th Cir. 2000); *see also Draper v. Reynolds*, 369 F.3d 1270, 1278 n.14 (9th Cir.), *cert*

3  *denied*, 543 U.S. 988, 125 S.Ct. 507, 160 L.Ed.2d 373 (2004) ("To state an equal protection

4  claim, [plaintiff] must allege that 'through state action, similarly situated persons have been

5  treated disparately' . . . and put forth evidence that [defendant's] actions were motivated by

6  race").

7        It is undisputed that Officer Horn did not use any racial slurs or otherwise indicate that

8  Plaintiff's race played a role in the incident; in accord is Plaintiff's own deposition testimony.

9  (Doc. 43, ¶ 26.)  Plaintiff's separate statement of facts includes the fact he "is Hispanic and is of

10 Mexican ancestry" (Doc. 43, ¶ 29), but, as indicated above, he fails to explain the relevance of

11 this fact in any argument.  (*See also* Docs. 45 & 47.)  No evidence has been disclosed from which

12 it may be inferred that any Defendant discriminated against Plaintiff or that similarly situated

13 persons have been treated disparately.

14        Plaintiff's reference to his right "to be free from summary punishment without due

15 process" (Doc. 1, ¶ 24) is more properly considered under the Fourth Amendment and its

16 reasonableness standard.  "Where a particular Amendment provides an explicit textual source of

17 constitutional protection against a particular sort of government behavior, that Amendment, not

18 the more generalized notion of substantive due process, must be the guide . . . ." *Albright v.*

19 *Oliver*, 510 U.S. 266, 273 (1994), internal quotation marks & citation omitted.

20        To the extent Plaintiff's first cause of action is based on a violation of either his due

21 process or equal protection rights, Defendants' motion is GRANTED.

22    **C.      *Plaintiff's Conviction Pursuant to California Penal Code section 415***

23        Plaintiff pled no contest to a violation of California Penal Code section 415(1).  (Doc. 45,

24 ¶ 10 & Exs. 6 & 7.)  Defendants contend Plaintiff's conviction bars his claim for damages under

25 Title 42 of the United States Code section 1983.  (Doc. 41 at 14-15.)  Plaintiff opposes

26 Defendants' position, indicating he is seeking to expunge his conviction and that his conviction

27 under California Penal Code section 415 "does not arise from the same circumstances . . . ."

28

(Doc. 48 at 14-15.)  In reply, Defendants assert that a dismissal of a conviction pursuant to California Penal Code section 1203.4 does not render a conviction a legal nullity, and therefore, such a dismissal would not "negate[] the operation of the *Heck v. Humphrey* doctrine to bar" Plaintiff's civil rights claim.  (Doc. 49 at 7-8.)

California Penal Code section 415(1) provides as follows:

> Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine:
> (1) Any person who unlawfully fights in a public place or challenges another person in a public place to fight.

Federal courts will not entertain claims seeking money damages under Title 42 of the United States Code section 1983 if doing so will require the court to rule on issues in dispute in a state court criminal proceeding.  *See Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).  Under the Supreme Court's holding in *Heck*, a section 1983 action "that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable, and does not, therefore, accrue until and unless the plaintiff can prove that his conviction or sentence has been reversed on direct appeal." *Harvey v. Waldron*, 210 F.3d 1008, 1014-16 (9th Cir.2000) (citing *Heck*, 512 at 486-87, 114 S.Ct. 2364).  The Ninth Circuit suggested in *Harvey* that the *Heck* rule applies to pending as well as outstanding convictions, *id.* at 1014, but this application of *Heck* has been explicitly overruled by the Supreme Court in *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1097-98, 166 L.Ed.2d 973 (2007), which held that *Heck* only bars 1983 claims that would impugn criminal convictions that have actually been obtained and are outstanding.  Ordinarily, *Heck* would not bar a court from hearing a claim for excessive force because such claims do not ordinarily impugn the underlying conviction. *Smithart v. Towery*, 79 F.3d 951, 952-53 (9th Cir. 1996).

Here, Plaintiff has moved for dismissal pursuant to California Penal Code section 1203.4. (Doc. 45, Ex. 9.) However, while such a petition for expungement does act to relieve a defendant from most disabilities and penalties associated with the offense, it does not nullify the conviction. *See People v. Vasquez*, 25 Cal.4th 1225, 1230, 108 Cal.Rptr.2d 610, 25 P.3d 1090 (Cal. 2001);

1    *United States v. Hayden*, 255 F.3d 768 (9th Cir. 2001) (a conviction "set aside" by Cal. Pen.

2    Code § 1203.4 just releases the defendant "from all penalties and disabilities resulting from the

3    offense," but does not invalidate the conviction).  Rather, the final judgment of conviction is a

4    fact which cannot be nullified even where a conviction is set aside pursuant to California Penal

5    Code section 1203.4.  *Id.*  Whether or not Plaintiff's petition was granted,[10] *Heck* will act to bar

6    Plaintiff's claims regarding his arrest or the probable cause related thereto, but it will not

7    preclude him from arguing that the police used excessive force.  *See Smithart v. Towery*, 79 F.3d

8    at 951.

9         Therefore, the *Heck* doctrine does not bar Plaintiff's claim regarding excessive force

10   because such a claim does not impugn the underlying conviction pursuant to California Penal

11   Code section 415(1).

12        **D.**     ***The Claim Against the City of Merced***

13         Defendants move for summary judgment on Plaintiff's first claim for relief pursuant to

14   Title 42 of the United States Code section 1983 alleging Defendant City of Merced is liable

15   because the harms alleged by Plaintiff are the direct result of policies, procedures and established

16   customs of the City.  (Doc. 41 at 17-19.)  Plaintiff fails to address Defendants' argument on this

17   issue.  (*See* Doc. 48.)

18        *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56

19   L.Ed.2d 611 (1978) authorizes direct suits against local government units under section 1983

20   where "the action that is alleged to be unconstitutional implements or executes a policy

21   statement, ordinance, regulation, or decision officially adopted and promulgated by that body's

22   officers."  *Monell*, at 690-91.  "Moreover, . . . local governments . . . may be sued for

23   constitutional deprivations visited pursuant to governmental 'custom' even though such a custom

24   has not received formal approval through the body's official decisionmaking channels.'"  *Id.*

25   Since "Congress did not intend municipalities to be held liable unless action pursuant to official

26

27           [10]The matter was set to be heard March 7, 2010, in the Merced County Superior Court.  (Doc. 45, ¶ 19.)

28   The Court is unaware of the outcome of the proceeding.

municipal policy of some nature caused a constitutional tort . . . a municipality cannot be held liable solely because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under [section] 1983 on a respondeat superior theory." *Id.*, at 691.  A municipality will be liable under section 1983 only if "the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  In order to assert a *Monell* claim and impose liability, a plaintiff must establish: (1) a violation of constitutional rights occurred; (2) the existence of a municipal policy or custom; (3) that this policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. at 389-91).

Specifically, Defendants assert that Officer Horn did not deprive Plaintiff of any constitutional right.  Moreover, Defendants contend Plaintiff "has produced no evidence that the City's investigation and supervision policies or practices amounted to "'deliberate indifference' to Plaintiff's constitutional rights." (Doc. 41 at 19.)  The Court has examined Plaintiff's opposition to Defendants' motion for summary judgment and can find no argument on this issue.  Thus, it appears Plaintiff has conceded the issue.

When a moving party alleges the absence of evidence to establish a material issue of fact, the non-moving party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586 n.11.  Plaintiff has the burden to come forward with specific facts to support his *Monell* claims.  *Mattos v. Agarano*, 590 F.3d at 1085.  Therefore, a successful *Monell* claim requires that Plaintiff show that an official policy permitted or encouraged the constitutional violation at issue.  *See Crowe v. County of San Diego*, 593 F.3d 841, 880 (9th Cir. 2010).  Because Plaintiff has tendered no evidence of the existence of any policy or established practice that is fairly traceable to the alleged harm, summary judgment will be GRANTED as to Plaintiff's first claim for relief against the City of Merced.

1

### E.    The State Law Claims

2

#### 1.    False Arrest and Imprisonment

3       In his second cause of action, Plaintiff asserted false arrest and imprisonment.  (Doc. 1 at

4  ¶¶ 30-37.)  Defendants argue that because Office Horn could have reasonably believed Plaintiff

5  intended to obstruct Officer Bazzar's efforts, "or escalate the danger of the situation, Officer

6  Horn possessed sufficient probable cause to arrest Plaintiff," and thus Defendants are entitled to

7  summary judgment on Plaintiff's second cause of action.  (Doc. 41 at 19-20.)

8       California Penal Code section 847 provides, in pertinent part:

9           (b) There shall be no civil liability on the part of, and no cause of action
     shall arise against, any peace officer or federal criminal investigator or law
10    enforcement officer described in subdivision (a) or (d) of Section 830.8, acting
     within the scope of his or her authority, for false arrest or false imprisonment
11    arising out of any arrest under any of the following circumstances:
           (1) The arrest was lawful, or the peace officer, at the time of the arrest, had
12    reasonable cause to believe the arrest was lawful.

13  Under California law, a law enforcement officer is protected from liability for false arrest where

14  the officer, acting within the scope of his or her authority, either (1) effects a lawful arrest or (2)

15  has reasonable cause to believe the arrest is lawful.  *Galvin v. Hay*, 374 F.3d 739 (9th Cir. 2004).

16       This Court has already found that Officer Horn had probable cause to arrest Plaintiff.

17  Thus, Defendants' motion for summary judgment on Plaintiff's second cause of action for false

18  arrest and imprisonment is GRANTED.

19

#### 2.    Assault and Battery

20       Plaintiff alleged assault and battery in his seventh cause of action as follows:

21           As a separate and distinct SEVENTH CAUSE OF ACTION, Plaintiff
     CAMPOS complains of Defendant CITY OF MERCED and Defendant JEFFREY
22    HORN, and each of them, and alleges:
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
23           Defendant HORN illegally and without legal justification tasered,
     assaulted and used excessive force upon [P]laintiff CAMPOS.  Said [D]efendant
24    HORN without just or legal cause[] viciously attacked [P]laintiff CAMPOS with
     his night stick.  All the foregoing was done under the color of law.
25           As a proximate result of the tasering, assault and battery upon [P]laintiff
     CAMPOS by said defendants, and each of them, plaintiff CAMPOS has sustained
26    severe physical, emotional and pecuniary loss as a result of the injuries.

27  (Doc. 1 at ¶¶ 77-80.)

28

1    Defendants note "Plaintiff has produced no evidence that Officer Horn used his night

2    stick against Plaintiff . . ." and thus the only basis for the cause of action is the use of the taser.

3    Defendants are correct on this point.

4    Defendants argue that California law provides a police officer is entitled to use reasonable

5    force in making an arrest, preventing flight or overcoming resistance.  The applicable standard is

6    a reasonable one and is highly deferential to the officer's need to protect himself and others.

7    Defendants argue that because "Officer Horn's use of force was reasonable under the

8    circumstances," he is entitled to judgment as a matter of law.  (Doc. 41 at 20-21.)

9           In order to prevail on a claim of battery against a police officer, the
             plaintiff bears the burden of proving the officer used unreasonable force.  A police
10           officer in California may use reasonable force to make an arrest, prevent escape or
             overcome resistance, and need not desist in the face of resistance.  The standard
11           jury instruction in police battery actions recognizes this:  A peace officer who uses
             unreasonable or excessive force in making a lawful arrest or detention commits a
12           battery upon the person being arrested or detained as to such excessive force.'
             (BAJI No. 7.54.)
13

14   *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102 (2004), internal quotation marks &

15   citations omitted.  Because this Court has found that Plaintiff may proceed with his first cause of

16   action as it relates to the use of excessive force by Officer Horn, Defendants' motion for

17   summary judgment as to Plaintiff's seventh cause of action is DENIED.

18   Defendants argue that the City is entitled to immunity from liability under California

19   Government Code section 815.2.  (Doc. 41 at 20-21.)  That section provides: "A public entity is

20   liable for injury proximately caused by an act or omission of an employee of the public entity

21   within the scope of his employment if the act or omission would, apart from this section, have

22   given rise to a cause of action against that employee or his personal representative."  This

23   provision clearly allows for vicarious liability of a public entity when one of its police officers

24   uses excessive force in making an arrest.  *See Mary M. v. City of Los Angeles*, 54 Cal.3d 202,

25   285 Cal.Rptr. 99, 814 P.2d 1341, 1348 (1991) ("[A] governmental entity can be held vicariously

26   liable when a police officer acting in the course and scope of employment uses excessive force or

27   engages in assaultive conduct"); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th

28

1   Cir 2007).  Because the City of Merced does not claim that Officer Horn was acting outside the

2   scope of his duties, and Officer Horn is not entitled to summary judgment on the use of

3   unreasonable force, the City is not entitled to immunity from liability under California

4   Government Code section 815.2.

5   **3.      Interference with California Civil Rights**

6   Plaintiff's third cause of action concerns an interference with California Civil Rights and

7   specifically references California Civil Code sections 43, 51 and 52.1.  Paragraph 42 states that

8   Officer Horn "pursued said course of conduct intentionally, maliciously, fraudulently, in

9   conscious disregard of the rights of Plaintiff CAMPOS and/or with reckless disregard of the

10  likelihood of causing serious injury to Plaintiff." (Doc. 1, ¶¶ 38-45.)  Defendants argue "there is

11  no evidence that Officer Horn discriminated against Plaintiff based on his race or any other such

12  characteristic."  (Doc. 41 at 21-22.)

13  California Civil Code section 43 provides:

14      Besides the personal rights mentioned or recognized in the Government
        Code, every person has, subject to the qualifications and restrictions provided by
15      law, the right of protection from bodily restraint or harm, from personal insult,
        from defamation, and from injury to his personal relations.
16

17  Section 51 of the California Civil Code, also known as the Unruh Civil Rights Act, provides, in

18  pertinent part:

19      (b) All persons within the jurisdiction of this state are free and equal, and
        no matter what their sex, race, color, religion, ancestry, national origin, disability,
20      medical condition, marital status, or sexual orientation are entitled to the full and
        equal accommodations, advantages, facilities, privileges, or services in all
21      business establishments of every kind whatsoever.

22  Lastly, California Civil Code section 52.1 states, in relevant part:

23      (a) If a person or persons, whether or not acting under color of law,
        interferes by threats, intimidation, or coercion, or attempts to interfere by threats,
24      intimidation, or coercion, with the exercise or enjoyment by any individual or
        individuals of rights secured by the Constitution or laws of the United States, or of
25      the rights secured by the Constitution or laws of this state, the Attorney General,
        or any district attorney or city attorney may bring a civil action for injunctive and
26      other appropriate equitable relief in the name of the people of the State of
        California, in order to protect the peaceable exercise or enjoyment of the right or
27      rights secured. An action brought by the Attorney General, any district attorney, or
        any city attorney may also seek a civil penalty of twenty-five thousand dollars

28

($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

(b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

In *County of Los Angeles v. Superior Court*, 181 Cal.App.4th 218 (2d Dist. 2009), the court stated:

Civil Code section 52.1 is part of a comprehensive legislation designed to combat hate crimes. The statutory language fulfills that purpose by providing remedies for certain misconduct that interferes with any right secured by the Constitution or laws of the United States . . . or of this state . . .. Civil Code section 52.1 does not require state action but applies to private as well as government actors. Also, under section 52.1, liability is limited to violations of constitutional or statutory rights accomplished by threats, intimidation, or coercion.

*Id.*, at 227-28, footnote, internal quotation marks and citations omitted. Plaintiff does not have to be a member of a protected class in order to sustain a civil rights claim under California Civil Code section 52.1. *See Venegas v. County of Los Angeles*, 32 Cal.4th 820, 11 Cal.Rptr.3d 692, 87 P.3d 1, 14 (2004).

Here, because a material dispute exists with regard to Officer Horn's use of force in the form of a taser, summary judgment on Plaintiff's third cause of action is not proper. Should a jury find excessive force was employed against Plaintiff, the jury may also find that by using such force Officer Horn committed a violent act against Plaintiff in violation of his California constitutional rights.

Thus, summary judgment for Defendants is DENIED with respect to the Plaintiff's third cause of action.

1    **4.    Intentional Infliction of Emotional Distress**

2        Plaintiff's fourth cause of action alleged intentional infliction of emotional distress.

3    (Doc. 1, ¶¶ 46-53.)  Defendants seek summary judgment because "Officer Horn had reasonable

4    suspicion and probable cause to detain and arrest Plaintiff, and used reasonable force in doing

5    so." (Doc. 41 at 22.)

6        The elements of intentional infliction of emotional distress are: (1) extreme and

7    outrageous conduct by the defendants with the intention of causing, or reckless disregard of the

8    probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

9    emotional distress; and (3) actual and proximate causation of the emotional distress by the

10   defendant's outrageous conduct.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 1001, 25

11   Cal.Rptr.2d 550, 863 P.2d 795 (1993); *Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th

12   790, 808, 52 Cal.Rptr.3d 376 (2006).  For conduct to be extreme and outrageous, it must be "so

13   extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Potter*, 6

14   Cal.4th 965 at 1001; *Delfino*, 145 Cal.App.4th at 809.

15       Here, the Court has determined that Plaintiff may proceed with his claim of excessive

16   force against Officer Horn, and therefore a trier of fact needs to determine whether Officer

17   Horn's actions constituted extreme and outrageous conduct.  Therefore, Defendants' motion for

18   summary judgment on Plaintiff's fourth cause of action for intentional infliction of emotional

19   distress is DENIED.  *See Blankenhorn v. City of Orange*, 485 F.3d at 487 n.17.

20       **5.    Negligence Per Se**

21       The Fifth Cause of Action, captioned "Negligence Per Se," alleges that Defendants "owed

22   a duty of care to Plaintiff CAMPOS not to falsely arrest and imprison [him] as set forth in the

23   Fourth Amendment . . ., Article One, Sections One and Seven of the California Constitution, and

24   California Civil Code sections 43 and 52.1" and that the alleged conduct of Defendants

25   constitutes negligence per se in that Defendants "breached the statutory standards set forth" in

26   these constitutional and statutory provisions.  (Doc. 1, ¶¶ 54-62.)

27           "Negligence per se" is an evidentiary doctrine codified at Evidence Code
        section 669. Under subdivision (a) of this section, the doctrine creates a

28

28

presumption of negligence if four elements are established: (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

*Quiroz v. Seventh Ave. Center*, 140 Cal.App.4th 1256, 1285, 45 Cal.Rptr.3d 222 (2006).  "[T]he doctrine of negligence per se does not establish tort liability. Rather, it merely codifies the rule that a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm that the plaintiff suffered as a result of the violation."  *Id*.  "Even if the four requirements of Evidence code section 669, subdivision (a), are satisfied, this alone does not entitle a plaintiff to a presumption of negligence in the absence of an underlying negligence action."  *Id*.  "Accordingly, to apply negligence per se is not to state an independent cause of action.  The doctrine does not provide a private right of action for violation of a statute."  *Id.*  Negligence per se is an evidentiary vehicle only.

Defendants' motion is GRANTED as to Plaintiff's fifth cause of action.

### 6.   Negligent Infliction of Emotional Distress and Negligence

Defendants move for summary judgment on Plaintiff's sixth cause of action for negligent infliction of emotional distress and negligence.  They contend that because this claim is derivative of Plaintiff's other claims, and because Officer Horn acted reasonably, they are entitled to summary adjudication.  (Doc. 41 at 23-24.)  Plaintiff has failed to address Defendants' argument in any way.  (*See* Doc. 48.)

There is no independent tort of negligent infliction of emotional distress.  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th at 984. Rather, the tort is negligence.  *Id.*

In California, the elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and the breach is the proximate cause of the resulting injury.  *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917-18 (1996); *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339 (1998).  Duty is the expression of a court's conclusion that a

1  particular plaintiff is entitled to protection.  *Rowland v. Christian*, 69 Cal.2d 108, 112 (1968);

2  *Mendoza v. City of Los Angeles*, 66 Cal.App.4th at 1339.

3       To the degree Plaintiff's negligence claim arises from his claim concerning the excessive

4  force employed by Officer Horn, Defendants are not entitled to summary judgment on this claim.

5  Thus, the motion is DENIED.

6       **F.    Punitive Damages**

7       Plaintiff's complaint prays for punitive damages against Officer Horn in connection with

8  the first, second, third, fourth and fifth causes of action.  (*See* Doc. 1.)  Defendants contend they

9  are entitled to summary judgment because Plaintiff has not produced any evidence "that Officer

10  Horn harbored an evil intent, or that his acts were reprehensible or fraudulent."  (Doc. 41 at 24-

11  25.)  Plaintiff briefly replies that "[t]here are reasonable inferences that can be drawn from the

12  evidence to support Plaintiff's claims of punitive damages . . .."  (Doc. 48 at 16-17.)

13       Punitive damages may be assessed in a Section 1983 action "when the defendant's

14  conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous

15  indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56, 103

16  S.Ct. 1625, 75 L.Ed.2d 632 (1983).  Under California law, punitive damages are allowed if the

17  plaintiff

18      . . . has proved by clear and convincing evidence that [the named defendant]
         engaged in that conduct with malice, oppression, or fraud. . . .
19           "Malice" means that [the named defendant] acted with into to cause injury
         or that [the named defendant's] conduct was despicable and was done with a
20       willful and knowing disregard of the rights or safety of another.  A person acts
         with knowing disregard when he or she is aware of the probable dangerous
21       consequences of his or her conduct and deliberately fails to avoid those
         consequences.
22           "Oppression" means that [the named defendant]'s conduct was despicable
         and subjected [the plaintiff] to cruel and unjust hardship in knowing disregard of
23       [his] rights.
             "Despicable conduct" is conduct that is so vile, base, or contemptible that
24       it would be looked down on and despised by reasonable people.

25  CACI 3941.

26       Because the use of the taser by Officer Horn arguably constitutes excessive force in

27  violation of the Fourth Amendment and state law, there is a question of fact whether his use of

28

the taser was motivated by evil motive or intent or was in reckless or callous indifference to the constitutional rights of Plaintiff.  Thus, the motion for summary judgment on the issue of punitive damages is DENIED with respect to Officer Horn as to the first, third, fourth, sixth and seventh causes of action.  The motion is GRANTED as to the second and fifth causes of action.

## ORDER

Accordingly, as set forth above:

1.   Defendants' motion for summary judgment is DENIED as to Defendant Officer Horn for the first cause of action involving an allegation of excessive force in violation of the Fourth Amendment, the third cause of action regarding California constitutional protections, the fourth cause of action for intentional infliction of emotional distress, the sixth cause of action for negligence, and the seventh cause of action for battery under state law;

2.   Defendants' motion for summary judgment as it relates to qualified immunity for Officer Horn is DENIED;

3.   Defendants' motion for summary judgment is GRANTED as to Plaintiff's due process and equal protections claims asserted within the first cause of action;

4.   Defendants' motion for summary judgment is GRANTED as to Plaintiff's first cause of action as against the City of Merced;

5.   Defendants' motion for summary judgment is GRANTED as to Plaintiff's second and fifth causes of action as to all Defendants;

6.   Defendants' motion for summary judgment as to Defendant City of Merced is DENIED as to Plaintiff's seventh cause of action;

7.      Defendants' motion for summary judgment as to the prayer for punitive damages is DENIED with respect to the first, third, fourth, sixth and seventh causes of action.  The motion is GRANTED with respect to the second and fifth causes of action.


IT IS SO ORDERED.

**Dated:**    **April 28, 2010**                   **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE